KLIEBERT, Judge.
Plaintiffs, Jane Berthold, wife of/and Charles Berthold, Jr., sued defendant, State Farm Insurance Company, the public liability insurer of Robert & Myrtle Gros-skopf’s home in Kenner. The suit sought damages for the husband’s loss of consortium and the wife’s personal injuries arising out of Mrs. Berthold’s fall on the walkway leading from the street to the entrance of the Grosskopfs’ home. A jury found damages of $150,000.00 for Mrs. Berthold’s personal injuries and allotted 90% fault to Mrs. Berthold and 10% fault to the property owners. Based on this verdict the trial judge rendered judgment against State Farm for $15,000.00 plus interest and costs. The jury found Mr. Berthold’s claim for loss of consortium was without merit.
Subsequently, on plaintiffs’ motion for judgment, notwithstanding the verdict and/or for an additur (including the husband’s claim for loss of consortium), the trial judge reduced plaintiff’s allotted fault to 75% but did not address the husband’s claim for consortium. Plaintiffs perfected a devolutive appeal. State Farm answered the appeal and also perfected a suspensive appeal.
We amend the judgment to reflect the initial jury allottment of 90% fault to Mrs. Berthold and as thus amended, affirm.
FACTS
Mrs. Berthold was working for Analytic Studies, Inc., a market research company. In September of 1983 Myrtle Grosskopf, a supervisor at Analytic Studies, called Mrs. Berthold about performing a telephone survey for the upcoming gubernatorial election. Mrs. Berthold went to the company’s second floor office, picked up the information, and returned home to do the survey. Before leaving, Mrs. Berthold was told the results were needed for the next morning. There was conflicting testimony as to whether Mrs. Grosskopf told Mrs. Berthold to bring the results of the survey to her home at 29 Forstall Avenue in Kenner, La. that evening or whether Mrs. Berthold had the option to bring them to Mrs. Gros- *690 skopf s home or the office the next morning.
In any event, that night Mr. Berthold drove his wife to the Grosskopfs’ home to deliver the survey results. Neither had been to Mrs. Grosskopf’s home before. Upon their arrival, Mrs. Berthold exited the car, walked behind the car, stepped over the curb, and started walking up the walkway toward the entrance to the house. The house was approximately one foot above street level. The walkway leading to the entrance of the house was divided into four segments, none less than five feet in length and each raised four inches above the other to reach the house level. There were no foreign substances, objects, or cracks or missing pieces of cement on the walkway. Most walkways in the same neighborhood did not have steps in the walkway, however, there were some which did. Mrs. Berthold tripped on the first of three four-inch “risers” or steps in the walkway. As she fell, her face hit the second riser.
Mrs. Berthold stated she was looking straight ahead and down, but that it was too dark to see the riser which caused her to fall. The approximate time of the accident was 9:30 P.M. and Mrs. Grosskopf did not have a porch light on. Additionally, the nearest street light to the house was about 95 feet away. However, Mr. and Mrs. Berthold stated that probably the car headlights were left on as she walked to the house.
Mrs. Berthold suffered a broken nose, two broken ribs, a broken finger, abraded knees, a cut above her lip, and allegedly a compression fracture of her spine, first reported about one year after the accident. Since 1970 Mrs. Berthold had suffered from a severe case of rheumatoid arthritis. She testified, however, that the pain and discomfort had been greatly diminished pri- or to the accident. Further, she said her arthritis was made much worse by the accident and moved into the only joint not previously afflicted, her knees. There is evidence, however, that her knees were a problem in the early 1970’s and again following a fall in 1981. Most importantly, her own treating physicians, who were the only medical experts that testified, stated they could not say the accident caused her knee problems. Nevertheless, each felt trauma of this type could adversely affect her arthritis.
In answer to specific interrogatories, nine out of twelve jurors found “Robert and Myrtle Grosskopf [were] at fault or negligent or [that] a defective condition existfed] on their premises as of September 2, 1983.” The defective condition and Mrs. Berthold’s negligence were found to be the proximate causes of the accident. Nine of the jurors allotted fault to the plaintiff of 90%.
FAULT
Counsel for appellants contends the trial court erred in finding Mrs. Berthold at fault in the accident. He argues the sidewalk created an unreasonable risk of harm for two reasons: (1) There was inadequate lighting to illuminate the risers, and (2) The risers were defectively designed in that the height of/and distance between the risers made them difficult to see. On the other hand, counsel for appellee argues the record contains enough evidence to support the jury’s finding and hence should not be disturbed now; nor should it have been disturbed by the trial judge.
Plaintiff submitted in evidence the expert testimony of Mr. Irvin Isaacson, an electrical engineer, and Mr. Wayne Gravois, an architect. They respectively concluded the walkway was defective because inadequately lit and designed, i.e., the risers should have been five inches in height (rather than four) and placed closer together for ease in negotiating same. From this he argues that once the jury found there was a defective condition, it had no basis for finding Mrs. Berthold negligent. In substance he contends, plainly speaking, it was “simply an all or nothing case,” i.e., plaintiff was entitled to full damages or nothing.
In support of his position counsel for plaintiffs cites Kuck v. City of New Orleans, 531 So.2d 1142 (La.App. 4th Cir.1988). Although his quotations are correct, *691 he erroneously analyzed the ultimate result in the ease. Although the Fourth Circuit held (1) the City could not shift its tort liability to bordering landowners, and (2) that the plaintiff did not assume the risk of walking on a defective walk, the jury assigned and the court upheld the jury’s allottment of 20% fault to the plaintiff Moreover, we agree with the appellee that the record here supports an allocation of 90% negligence to the plaintiff.
We note that both of plaintiffs’ experts went to the accident site at night and both testified the “steps” or “risers” on the walk were visible. Further, Mr. Berthold said he could see the house numbers on the Grosskopfs’ house as well as the risers and it wasn’t so dark that he was concerned about his wife getting out of the car by herself. Moreover, in addition to the street lights and the moonlight which illuminated the area, both Mr. and Mrs. Berthold said they believed the headlights on the car were on. Also, there were no cracks, chips, foreign objects, or foreign substances on the walkway. The lawn was well maintained and did not obstruct the view of the risers. Given these facts, the jury could easily conclude Mrs. Berthold contributed in part to the accident by failing to keep a proper lookout and seeing what was there for her to see.
Further, given Mrs. Berthold’s shuffling gait and Dr. Levy’s expert testimony, that it was not unusual for someone with that type of gait to have frequent falls, the judge and jury concluded Mrs. Berthold’s contribution to the cause of the accident was substantially greater than that of the Grosskopfs or that of Mrs. Kuck in the City of New Orleans case, supra. Therefore, we cannot say the jury erred in finding Mrs. Berthold’s fault was a substantial cause of the accident. In addition, we believe the trial judge erred in reducing the jury’s 90% allottment of fault to Mrs. Bert-hold to 75%.
In order for the trial judge to grant a motion, notwithstanding the verdict, the evidence must point “so strongly and overwhelmingly in favor of moving party that reasonable men could not arrive at a contrary verdict on the facts at issue.” Bickham v. Goings, 460 So.2d 646 (La.App. 1st Cir.1984) writ. denied, 462 So.2d 1246 (La.1985).
The court in Blum v. New Orleans Public Service, Inc., 469 So.2d 1117 (La.App. 4th Cir.1985) writ. denied, 472 So.2d 921 (La.1985), cited by appellant, said at page 1119: “if there is substantial evidence of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions, the motion for judgment notwithstanding the verdict should be denied.”
Although the trial judge may hot have agreed with the percentage of negligence assigned to the plaintiff, that alone is not enough to grant the motion. The jury was the trier of the facts. Neither the trial court nor this court should substitute its own judgment for that of the jury. Given the facts of this case we hold the evidence supports the 90% allottment of fault to the plaintiff and the trial judge abused his discretion in reducing the allottment to 75%.
QUANTUM
Counsel for plaintiffs contend the jury verdict was so low as to constitute an abuse of discretion. Appellee’s counsel contends the award was most generous.
In order to disturb the damage award to Mrs. Berthold for her personal injuries assessed by the jury, an initial determination must be made that the jury’s great discretion in the award of general damages has been abused. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Here Mrs. Berthold clearly sustained a broken nose, a cut lip, two broken ribs, and abrasions and scrapes on her knees, all of which healed without any difficulty. Her first complaint to a physician of a back injury did not occur until July 11, 1984, almost one year after the accident. By far, Mrs. Berthold’s greatest difficulty was the rheumatoid arthritis. Dr. Levy testified there was no way for him to definitely relate the progression of the disease to the fall. Dr. Williams, a specialist in rheumatoid arthritis, testified about the severity of *692 the disease in Mrs. Berthold prior to the accident. He also testified as to the progression of the disease and that people have ups and downs as a result of the disease. Dr. Williams testified that he could not say one way or another whether the rheumatoid arthritis which Mrs. Bert-hold suffered from was aggravated by the accident. Dr. Levy said that it most probably was.
Mrs. Berthold testified that she had been suffering with severe rheumatoid arthritis since 1970. The arthritis was so severe that both wrists and both hips had been removed and replaced with plastic prosthesis. On cross-examination it was brought out that she had a prior fall in which she had claimed an aggravation of the existing rheumatoid arthritis and claimed total disability therefor.
Thus, in setting the general damages the jury had to weigh the evidence and determine the extent to which Mrs. Berthold’s disability from the arthritic condition at the time of trial was the result of the slip and fall here sued on. We cannot say they erred in making that determination. Therefore, we hold the $150,000.00 for Mrs. Berthold’s total damages was neither inadequate nor excessive.
This brings us to Mrs. Berthold’s claim for loss of consortium.
It was clearly within the discretion of the jury to determine whether Mr. Berthold suffered loss of consortium and support as a result of the accident. Considering Mrs. Berthold’s past medical history and the testimony of the doctors concerning the normal progression of rheumatoid arthritis, there is ample evidence in the record for one to conclude that any loss of consortium, support, services, etc., was more likely the result of the pre-existing arthritic condition and not the result of the fall. Hence, we cannot say the jury erred in making the determination that Mr. Bert-hold was not entitled to an award for loss of consortium, support, services, etc.
CONCLUSION
For the reasons above stated, we amend the trial court’s judgment to reflect the jury verdict’s allottment of 90% fault to Mrs. Berthold and as thus amended, affirm.
AMENDED AND, AS AMENDED, AFFIRMED.